Filed 3/19/15  In re G.L. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re G.L., a Person Coming Under the Juvenile Court Law. | H041182 (Santa Cruz County Super. Ct. No. DP002686) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.L., Defendant and Appellant; KETCHIKAN INDIAN COMMUNITY, Intervener and Appellant. | |
| In re G.L., a Person Coming Under the Juvenile Court Law. | H041243 (Santa Cruz County Super. Ct. No. DP002686) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.L., Defendant and Appellant. | |

# I.    INTRODUCTION

D.L. is the father of G.L., the child at issue in this juvenile dependency case, which is the subject of two separate notices of appeal by the father and one notice of appeal by the Ketchikan Indian Community, which was determined to be the child's Indian Tribe for purposes of the Indian Child Welfare Act (ICWA).

At a selection and implementation hearing held pursuant to Welfare and Institutions Code section 366.26,[1] the juvenile court found that the child was adoptable and that the beneficial parent-child relationship exception to termination of parental rights did not apply (see § 366.26, subd. (c)(1)(B)(i)), but the juvenile court did not terminate parental rights.  The juvenile court also found good cause to not follow ICWA guidelines regarding the child's placement and ordered her continued placement with the de facto parents, who were nonrelative caregivers, instead of with extended family members.  (See § 361.31, subds. (b), (h).)  The juvenile court directed the Ketchikan Indian Community to submit a plan of tribal customary adoption (see § 366.26, subd. (c)(2)(B)(iii)), then continued the selection and implementation hearing to give the Ketchikan Indian Community time to submit such a plan (see § 366.24, subd. (c)(6)).

At a separate hearing, the juvenile court issued a three-year restraining order that contained personal conduct and stay-away orders protecting the child and the de facto parents from the father.

In case No. H041182, the father and the Ketchikan Indian Community both filed notices of appeal from the juvenile court's orders at the selection and implementation hearing.  In case No. H041243, the father filed a notice of appeal from the juvenile court's orders at the restraining order hearing.  We denied the father's motion to consolidate the two appeals, but ordered the two cases considered together for purposes

---

[1] All further statutory references are to the Welfare and Institutions Code.

of briefing, oral argument, and disposition.  We also set a briefing schedule to accommodate responses to the positions taken by the various parties.

The Ketchikan Indian Community contends the juvenile court erred in deviating from the ICWA placement preferences when it ordered the child placed with the de facto parents rather than with a member of the child's extended family.  However, the Ketchikan Indian Community concedes that this issue is now moot because the child was placed with extended family members during subsequent proceedings.  We agree and will therefore dismiss the Ketchikan Indian Community's appeal as moot.

The father contends that the juvenile court did not understand that with an order of tribal customary adoption, the court was precluded from terminating parental rights.  The father also contends that substantial evidence does not support the juvenile court's finding that the beneficial parent-child exception to termination of parental rights did not apply.  We decline to reach these issues because the juvenile court did not terminate parental rights.  We will therefore affirm the juvenile court's order directing the Ketchikan Indian Community to submit a plan of tribal customary adoption in case No. H041182.

The father's briefing does not address any issues relating to the restraining order issued by the juvenile court.  We will therefore dismiss the father's appeal in case No. H041243.

## II.    BACKGROUND[2]

### A.    *Section 300 Petition and Detention Hearing*

On September 18, 2012, the Santa Cruz County Human Services Department (the Department) filed a petition under section 300, subdivisions (b) [failure to protect] and (g) [no provision for support] alleging that the child, age seven, came within the jurisdiction of the juvenile court.

The petition alleged that the father was arrested on September 14, 2012 for public intoxication and child endangerment after being found drunk with the child.  The petition alleged that the father had a history of substance abuse and that he had arrests for disorderly conduct, being under the influence, driving under the influence, and possession of controlled substance paraphernalia.

The petition alleged that C.W., the child's mother, also had substance abuse issues.  The investigative information attached to the petition indicated that the child had previously been living with the mother in Alaska, but that the mother had lost custody of the child due to drug addiction.

On September 19, 2012, the juvenile court found a prima facie showing that the child came within section 300 and that continuing the child in the home of the father was contrary to the child's welfare, and it ordered the child detained.

---

[2] Pursuant to the father's written request, we have taken judicial notice of the record in case No. H040460, which provides much of the background for the instant appeals.  In that case, the father filed a notice of intent to file a writ petition from the juvenile court's order setting a selection and implementation hearing (see § 366.26), but the father did not file a writ petition.

On our own motion, we have also taken judicial notice of the record in case No. H041772, which contains additional proceedings in this case and in which the father filed a notice of appeal.  We dismissed that appeal as abandoned after the father's appellate counsel filed a "no issues" statement and father failed to submit a request to file a supplemental brief on his own behalf.  (See *In re Phoenix H.* (2009) 47 Cal.4th 835, 844.)

### B.  ICWA Declaration and Jurisdiction/Disposition

On October 22, 2012, an ICWA expert filed a declaration regarding the child.  The expert had discovered that the child was eligible for membership in the Metlakatla Indian Community as well as the Ketchikan Indian Community,[3] but that she had more significant contact with the Ketchikan Indian Community, such that the Ketchikan Indian Community should be her Indian Tribe for ICWA purposes.  (See § 224.1, subd. (e)(2).)

The Department filed a jurisdiction/disposition report on October 23, 2012.  The Department recommended that the juvenile court make the child a dependent of the court and that the parents be provided with reunification services.  The jurisdiction/disposition report noted that the mother had lost parental rights to seven of her other children.  The father had a history with Child Protective Services in Wisconsin, where he and the child had lived before moving to the Santa Cruz area.

On October 23, 2012, the juvenile court found that ICWA applied and that ICWA notice had been given in a timely manner.

A contested hearing was held on December 10, 2012.  The juvenile court found the allegations of the petition true and ordered reunification services to both parents.  The court determined that the Ketchikan Indian Community would be designated as the child's tribe for ICWA purposes, and it allowed the Ketchikan Indian Community to intervene in the case.

### C.  Six Month Review

Prior to the six-month review hearing, the Ketchikan Indian Community filed recommendations for changes to the child's case plan.  The Ketchikan Indian Community recommended the child be placed with relatives in Alaska.

---

[3] In some of the records below, the Ketchikan Indian Community is referred to as the Ketchikan Indian Corporation.

5

The Department's six-month review report was filed on June 25, 2013. The Department recommended the juvenile court order an additional six months of reunification services for both parents. The child was living in a placement in Santa Cruz County with nonrelated extended family members, and the child had developed a close connection to the caregivers, who were interested in adopting her. A maternal aunt who lived in Alaska was also identified as a candidate for placement and adoption if reunification was not successful. The maternal aunt and her husband had adopted one of the child's half-siblings, and they were affiliated with the Ketchikan Indian Community.

The father had participated in services. He completed a parenting class but had exhibited defensiveness and a difficulty focusing. He was working but did not have a stable residence. He had participated in drug and alcohol treatment but had been terminated from a program, had tested positive for methamphetamine, had not completed a number of scheduled tests, and had been arrested for public intoxication. The father had been inconsistent in visiting the child. The mother had not participated in any services.

At the six month review hearing held on June 25, 2013, the juvenile court continued the child as a dependent of the court and ordered reunification services to continue. The juvenile court also granted the child's caregivers' request for de facto parent status.

On August 15, 2013, the juvenile court appointed a court-appointed special advocate (CASA) for the child.

### D.     Twelve Month Review

The Department filed its 12-month review report on November 5, 2013. The Department recommended that the juvenile court terminate reunification services as to both parents and set a selection and implementation hearing (see § 366.26).

The child remained in a placement with the de facto parents, who continued to express an interest in adoption. The maternal aunt and uncle in Alaska had been

6

approved for placement following a home study, and they had initiated a relationship with the child through phone calls. They, too, were interested in adopting the child. The Ketchikan Indian Community preferred that the child be placed with the maternal aunt and uncle.

The father had been referred to a counselor, who reported that the father had not been able to make behavioral changes. The father had also been referred for an anger management assessment and individual anger management sessions, but he had not started the individual sessions. The father had not followed through with a psychotropic medication evaluation. The father still did not have stable housing. He had been attending outpatient substance abuse treatment but needed more time in the program or residential treatment. He had three recent positive tests for controlled substances but denied drug use. The mother still had not completed any case plan activities.

The father had been attending supervised visits with the child two times per week. He provided snacks at the visits. The child and father greeted each other with hugs and kisses. The father read books and reviewed homework with the child. However, there were also times when the father did not pay attention to the child during visits, and he had made negative comments about the de facto parents to the child.

The child's CASA filed a report on November 5, 2013. The CASA reported that at one point, the child indicated a preference to remain in her current placement with the de facto parents, but that the child later indicated she wanted to be "split in two" so she could stay with the de facto parents but also get to know her maternal relatives in Alaska. The CASA believed the child could adjust to living with her maternal relatives but recommended that the child have the opportunity to visit them in Alaska before any decision about changing her placement.

A contested 12-month review hearing was held on December 9, 2013.  The juvenile court terminated reunification services to the parents and set a selection and implementation hearing for March 25, 2014.[4]

### E.     Selection and Implementation Hearing

The Department filed a section 366.26 report on March 25, 2014.  The Department recommended that the juvenile court terminate parental rights and select adoption as the permanent plan.  The Department had also discussed the possibility of tribal customary adoption with the Ketchikan Indian Community's ICWA representative.

The child had visited with her maternal aunt and uncle in Alaska, and the maternal aunt and uncle had visited the child in California.  The child had informed the social worker that she "would be 'good' living with her family in Alaska," but she had subsequently expressed that "she wasn't so sure about going to Alaska anymore."  The child was concerned about leaving her friends and not being able to see her father as often.  The social worker reported that the child was "attached and bonded to her father" and that it was "clear that she loves her father dearly," but that the child understood that her father could not care for her because of his unaddressed substance abuse issues.

The child's CASA also submitted a report on March 25, 2014.  The CASA reported that the child was "adamant that she does not want to move" to Alaska.  The child had also indicated that it was "easier" seeing her father less frequently.

A contested selection and implementation hearing began on May 7, 2014 and continued over several days.  Witnesses included the child's therapist, social workers, the maternal aunt, one of the de facto parents, the Ketchikan Indian Community's ICWA expert, and the father.  In addition, the child testified in chambers.

---

[4] The father filed a notice of intent to file a writ petition following the 12-month review orders (case No. H040460), but he did not file a writ petition.  (See fn. 2, *ante*.)

During the selection and implementation hearing, the Department and the mother advocated for the child's placement with the maternal relatives in Alaska, pursuant to the ICWA placement guidelines. (See § 361.31, subd. (b).[5]) The child's attorney advocated for the juvenile court to find there was good cause to deviate from the ICWA placement guidelines. (See *id.*, subd. (h).[6])

On June 2, 2014, the fifth day of the selection and implementation hearing, the juvenile court found good cause not to follow the ICWA placement guidelines. The juvenile court found that it was in the child's best interest to remain with the de facto parents in Santa Cruz County.

On June 25, 2014, the sixth day of the selection and implementation hearing, the juvenile court found that the child was adoptable. (See § 366.26, subd. (c)(1).) The juvenile court also found that the beneficial parent-child exception to termination of parental rights did not apply. (See *id.*, subd. (c)(1)(B)(i).) However, the juvenile court did not terminate parental rights. The juvenile court ordered the Ketchikan Indian Community to submit a tribal customary adoption plan, then continued the selection and implementation hearing to August 21, 2014. (See *id.*, subd. (c)(2)(B)(iii); § 366.24, subd. (c)(6).)

---

[5] Section 361.31, subdivision (b) lists the following placement preferences for foster care of an Indian Child, in "descending priority order": "(1) A member of the child's extended family . . . . [¶] (2) A foster home licensed, approved, or specified by the child's tribe. [¶] (3) An Indian foster home licensed or approved by an authorized non-Indian licensing authority. [¶] (4) An institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." The ICWA preference for an adoptive placement is also with members of the child's extended family. (*Id.*, subd. (c)(1).)

[6] Pursuant to section 361.31, subdivision (h), the juvenile court "may determine that good cause exists not to follow [ICWA] placement preferences . . . in accordance with subdivision (e)," which permits consideration, "[w]here appropriate," of the Indian child's placement preference.

9

Following the June 25, 2014 hearing, the father filed a notice of appeal, indicating he would be challenging the juvenile court's finding of adoptability and its finding that the beneficial parent-child exception to termination of parental rights did not apply. The Ketchikan Indian Community subsequently filed its own notice of appeal, indicating it would be challenging the juvenile court's June 2, 2014 decision not to follow the ICWA placement guidelines.

### F. Restraining Order Proceedings

On June 25, 2014, the Department filed a request for a restraining order, naming the child and the de facto parents as the persons needing protection, and identifying the father as the person to be restrained. An affidavit from a social worker was attached. The social worker reported that the de facto parents were concerned about their safety. The father had made threats to the de facto parents, and he had exhibited uncontrolled anger during supervised visits with the child.

The juvenile court issued a temporary restraining order. On July 14, 2014, the juvenile court issued a three-year restraining order containing personal conduct, no-contact, and stay-away orders.

The father filed a notice of appeal from the juvenile court's issuance of the three-year restraining order.

### G. Subsequent Proceedings

On August 11, 2014, the father filed a section 388 petition, requesting the juvenile court vacate the continued selection and implementation hearing and reinstitute reunification services.

On August 21, 2014, the date set for the continued selection and implementation hearing, the juvenile court noted that the Ketchikan Indian Community had filed a notice of appeal, and it therefore ordered the selection and implementation hearing continued to November 20, 2014.

On November 12, 2014, the Department filed a section 388 petition requesting the juvenile court change its finding of good cause not to follow the ICWA placement guidelines. The Department reported that on November 3, 2014, the de facto parents had given the Department notice to have the child removed from their care and that on November 5, 2014, the minor had been placed in the care of her maternal uncle, who had flown to California from Alaska.

The child's CASA filed a memo to the court on November 20, 2014. She reported that, according to the de facto parents, the father had not been complying with the restraining order, causing the child to become scared and the de facto parents to become frustrated.

At a hearing on November 20, 2014, the juvenile court again continued the selection and implementation hearing. The juvenile court set a hearing date of December 17, 2014 for the father's section 388 petition and the Department's section 388 petition.

On December 17, 2014, the juvenile court denied the father's section 388 petition, declining to reinstitute reunification services. The juvenile court granted the Department's section 388 petition, finding there had been a change of circumstances and ordering the child placed with her maternal aunt and uncle in Alaska. The court again continued the selection and implementation hearing, to February 19, 2015.[7]

---

[7] The father filed a notice of appeal from the orders issued at the December 17, 2014 hearing (case No. H041772), but we dismissed that appeal as abandoned. (See fn. 2, *ante*.) The records filed in this court do not include the proceedings at the February 19, 2015 hearing.

# III.   DISCUSSION

## A.   *The Father's Appeal*

### 1.   **The Parties' Contentions**

The father contends that the juvenile court erroneously believed that it would be terminating parental rights when, in fact, the juvenile court is precluded from terminating parental rights when it orders a tribal customary adoption.  The father also contends that substantial evidence does not support the juvenile court's finding that the beneficial parent-child relationship exception to termination of parental rights did not apply.

The Ketchikan Indian Community agrees that it is "inappropriate" for the juvenile court to terminate parental rights when the juvenile court selects tribal customary adoption as the permanent plan.  However, the Ketchikan Indian Community notes, "the issue may not be ripe for appeal," since parental rights were not actually terminated.  The Ketchikan Indian Community contends substantial evidence supports the juvenile court's finding that there was not a beneficial parent-child relationship.  Appellate counsel for the child has filed a letter brief, stating that the child joins in the arguments presented by the Ketchikan Indian Community.

The Department similarly argues that the question of whether the juvenile court may terminate parental rights when ordering a tribal customary adoption "may not be ripe for appeal."  The Department explains that even if the father is correct in asserting that termination of parental rights is precluded with a tribal customary adoption, "it is unclear what order would thereby be reversed," since the juvenile court did not terminate parental rights.  As to the beneficial parent-child relationship exception, the Department takes the same position:  that the issue is not ripe for review since the juvenile court did not terminate parental rights.  The Department argues that even assuming that issue is ripe, substantial evidence supports the juvenile court's finding that there was no beneficial parent-child relationship.

12

## 2. Tribal Customary Adoption Procedures

A " 'tribal customary adoption' " is an "adoption by and through the tribal custom, traditions, or law of an Indian child's tribe" that does not require termination of parental rights. (§ 366.24, subd. (a)(1).) Tribal customary adoption (TCA) "is an alternative to a standard adoption and protects both the Tribe's and the child's interests in maintaining tribal membership by formalizing an adoption by an individual selected by the Tribe without terminating parental rights." (*In re A.M.* (2013) 215 Cal.App.4th 339, 348 (*A.M.*).) TCA has been an alternative placement plan for Indian children in California since July of 2010. (Stats. 2009, ch. 287, § 12; see *In re H.R.* (2012) 208 Cal.App.4th 751, 759 (*H.R.*).) The Legislature provided for tribal customary adoptions in part because " 'termination of parental rights can disrupt the child's ability to be a full member of the tribe or participate fully in tribal life.' " (*H.R., supra,* at p. 761.) In a tribal customary adoption, the adoptive parents may be ordered to provide the child with opportunities to participate in tribal culture. (See *id.* at p. 757.)

"Section 366.24 sets forth the procedures to institute a TCA. First, the assessment report for the selection and implementation hearing must address the TCA option. (§§ 366.21, subd. (i)(1)(H), 366.24, subd. (b).) If the Tribe decides that TCA is the appropriate alternative, the Tribe or its designee conducts a home study prior to approval of the TCA placement, including a check of the Child Abuse Central Index and state and federal criminal background checks. (§ 366.24, subd. (c)(1), (2), & (3).) This assessment and the TCA order from the Tribe should be completed prior to the selection and implementation hearing and the TCA order should be filed with the court prior to the selection and implementation hearing. (§§ 366.21, subd. (i)(1)(H), 366.24, subd. (c)(6).) However, if it is not and the Tribe has identified TCA as the desired permanent placement plan, the juvenile court may continue the selection and implementation hearing for up to 120 days to permit the Tribe to complete the process for TCA and file the TCA order with the juvenile court. (§ 366.24, subd. (c)(6).) The juvenile court has discretion

to continue the hearing for an additional 60 days to complete the TCA process. (§ 366.24, subd. (c)(6).)" (*A.M., supra,* 215 Cal.App.4th at p. 348.)

"At the selection and implementation hearing the parties may present evidence to the Tribe on the TCA and the minor's best interest. (§ 366.24, subd. (c)(7).) Once the juvenile court affords full faith and credit to the TCA order the child is eligible for TCA placement. (§ 366.24, subd. (c)(8).) After the order has been afforded full faith and credit, the TCA parents file an adoption petition. (§ 366.24, subd. (c)(12).) Following required reports to the court, a period of supervision and a final decree of adoption, the TCA parents have the same rights as any other adoptive parent and the court terminates jurisdiction over the child. (§ 366.24, subd. (c)(12), (13) & (14).)" (*A.M., supra,* 215 Cal.App.4th at p. 348.)

### 3.    Analysis

The father challenges the juvenile court's finding that the beneficial parent-child relationship exception to termination of parental rights did not apply, and he contends the juvenile court's findings indicated an erroneous belief that it would terminate parental rights after the Ketchikan Indian Community submitted a plan for a tribal customary adoption. However, these findings did not provide the basis for any of the juvenile court's orders.

In dependency proceedings, orders, not juvenile court findings, are appealable. (See § 395, subd. (a)(1) ["A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment."].) Here, the order at issue in the father's appeal is the juvenile court's order directing the Ketchikan Indian Community to submit a plan for tribal customary adoption. Thus, we can only review the findings that formed the basis of that order. None of those findings are challenged in the father's appeal.

The findings that the father does challenge would be at issue if the juvenile court had issued an order terminating parental rights. Since the juvenile court did not issue an

order terminating parental rights, we decline to review the challenged findings. (Cf. *In re S.B.* (2009) 46 Cal.4th 529, 534 ["review of findings is normally obtained by appeal from the *ensuing* judgment or order"], italics added.)

### B.      The Ketchikan Indian Community's Appeal

The Ketchikan Indian Community contends the juvenile court erred in deviating from the ICWA placement preferences when it ordered the child placed with the de facto parents rather than a member of the child's extended family (see § 361.31, subd. (b); fn. 5, *ante*), because the juvenile court used "a standard of proof of 'good cause' " instead of a clear and convincing evidence standard of proof. However, the Ketchikan Indian Community acknowledges, this issue is moot because the child has now been placed with extended family members. The father and the Department both agree the issue is moot.[8]

Because the child has been placed with a member of her extended family in accordance with the priority placement preference set forth in section 361.31, subdivision (b), we agree that the Ketchikan Indian Community's appeal is moot. We will therefore dismiss the Ketchikan Indian Community's appeal.

### C.      Case No. H041243

As noted above, the father's briefing on appeal does not address any issues relating to the restraining order issued by the juvenile court. We will therefore dismiss the father's appeal in case No. H041243.

---

[8] The Department points out that a recent appellate case held that the clear and convincing evidence standard of proof applies to the determination of whether, under section 361.31, subdivision (h), "good cause exists not to follow placement preferences." (See *In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1352.)

## IV.    DISPOSITION

In case No. H041243, the father's appeal is dismissed.

In case No. H041182, the Ketchikan Indian Community's appeal is dismissed as moot.  The juvenile court's June 25, 2014 order directing the Ketchikan Indian Community to submit a plan of tribal customary adoption is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
MÁRQUEZ, J.